**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| SCOT ELEY, *et al.*, | Case No. 3:16-cv-00395 |
| Plaintiffs/Counter-Defendants, | District Judge Walter H. Rice |
| vs. | Magistrate Judge Sharon L. Ovington |
| ANTOINETTE LANZA, *et al.*, | |
| Defendants/Counter-Claimants. | |

# REPORT AND RECOMMENDATIONS[1]

What does Nevada law say when the owners/members of a Limited Liability Company vote to exclude one of their own from the LLC? This and other questions arise in this diversity-jurisdiction case due to the alleged lack of a written agreement concerning the operation of Defendant NicQuid, LLC (NicQuid). NicQuid is an ongoing business entity created under Nevada law. It presently does business in Montgomery County, Ohio. NicQuid makes and distributes electronic cigarette products.

The parties agree that On July 18, 2012, NicQuid's Articles of Incorporation were filed with the Nevada Secretary of State. (Doc. #3, *PageID* #61, ¶11; Doc. #5, *PageID* #84, ¶1). Copies of those Articles of Organization and related documents contain no information about NicQuid's members' rights or operational duties. (Doc. #3, *PageID* #s 75-78).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

**I.**

The parties' pleadings allege different facts concerning some events. Their differences, however, are insignificant at the present stage of the litigation. Here, the well-pleaded allegations in Plaintiffs' complaint are accepted as true and their complaint is construed in their favor. *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Doing so reveals that Plaintiffs are owners and managing members of Nicquid. Lanza was a member of Nicquid at its creation. She made an initial capital contribution of $15,000.00. Since its inception in 2012, NiQuid "has not been managed, operated, or organized, or run in accordance with any **written** operating or partnership agreement." (Doc. #2, Plaintiffs' Complaint, *PageID* #54, ¶11) (emphasis added). "Within a year of NicQuid's incorporation, Lanza disengaged herself from assisting in any way with the company's operation." *Id*. at ¶12. As of the date Plaintiffs filed their Complaint, Lanza had made "no contribution whatsoever" to NicQuid for over three years. *Id*. at ¶13

Plaintiffs allege that Lanza has engaged in various wrongful acts such as using NicQuid's expense account for her personal travel expenses, without Plaintiffs' permission, and involving herself in setting up a company that would directly compete with NicQuid. Plaintiffs had previously agreed that she could not engage in these activities.

In September 2015, Plaintiffs voted unanimously to remove Lanza from NicQuid. Lanza has refused all offers to buy out her capital contribution, apparently after she was allegedly removed.. She "continues to receive profit distributions from NicQuid." *Id*. at ¶26.

Plaintiffs claim that Lanza's wrongful conduct breached the parties' oral operating agreement and violated her fiduciary duty owed to NicQuid and Plaintiffs. They further claim that Lanza unjustly enriched herself by receiving a portion of NicQuid's profits without materially participating in or contributing to NicQuid's generation of profits. *Id*. at 27.

Plaintiffs seek declarations that Lanza has no further interest in NicQuid and that Lanza breached her agreement with Plaintiffs and the fiduciary duties she owed to NicQuid and Plaintiffs. They also seek an Order directing Lanza to return to Plaintiffs and NicQuid all the disbursements she received after September 2015—an amount allegedly exceeding $25,000.00.[2]

The case is presently before the Court upon Defendant Lanza's Motion for Partial Judgment on the Pleadings (Doc. #11), Plaintiffs' Response (Doc. #14), Defendant Lanza's Reply (Doc. #15), and the record as a whole.

**II.**

To resolve Lanza's motion for partial judgment on the pleadings, the Court determines whether Plaintiffs' complaint "states a plausible claim for relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). The complaint must contain sufficient factual allegations that, when taken as true, "'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (citation omitted); *see D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The

---

[2] Defendant Lanza has filed counterclaims that are not at issue.

Court "'need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" *Marino*, 747 F.3d at 383 (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### III.

Lanza argues that she is entitled to judgment as a matter of Nevada law on all of Plaintiffs' claims that emerge from the allegation that Plaintiffs' removed her as a NicQuid member and the assertion that she no longer holds an ownership interest in NicQuid. Plaintiffs "do not necessarily concur" that Nevada law controls the parties' rights and liabilities. (Doc. #14, *PageID* #116).

Three steps lead to Nevada law. First, the substantive law of the forum state—here, Ohio law—generally applies in diversity-jurisdiction cases. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)). Second, this general rule does not apply in the present case because Ohio's conflict-of-law rules direct, "the laws of the state under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its members." Ohio Rev. Code § 1705.53; *see Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 494 (1941); s*ee also Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 578, 2013 WL 645952, at *1 (6th Cir. 2013) ("Ohio is the forum state, so we apply its choice-of-law rules."). Third, the parties agree that NicQuid is a foreign limited liability

4

company organized in Nevada. *Compare* Doc. #2, *PageID* #53, ¶ 4 *with* Doc. #3, *PageID* #58, ¶ 3. As a result, Ohio Rev. Code § 1705.53 dictates that Nevada substantive law applies in the circumstances of this case.

Under Nevada law, "[a] limited-liability company may, but is not required to, adopt an operating agreement…." Nev. Rev. Stat. § 86.286(1). Lanza states, and Plaintiffs do not comment on, that if no operating agreement exists, the LLC is subject to "the provisions of Chapter 86 of the Nevada Revised Statutes." (Doc. #11, PageID # 105). Lanza reports that the provisions of Chapter 86 "are silent on the issue of whether, in the absence of an operating agreement, a member of an LLC can be involuntarily expelled." *Id.* (citing Nev. Rev. Stat. § 86.011, *et seq.*). Plaintiffs "concur with defendant that there is no statutory section governing the expulsion of an inactive member of a Nevada [LLC]." (Doc. #14, *PageID* #116).

This leads Lanza to contend, "Nevada law simply does not provide for involuntary expulsion of members in the absence of an operating agreement provision for such." (Doc. 15, *PageID* # 121). The problem with this line of reasoning is that Plaintiffs allege that NicQuid, from its inception, has not been subject to "any **written** operating or partnership agreement." (Doc. #2, *PageID* #54, ¶11). This leaves open the possibility that the parties entered into a non-written oral operating agreement. Plaintiffs assume this mantle by arguing, "the fact that there was no written agreement in no way means there was no agreement. Indeed, numerous allegations in the complaint are predicated upon defendant's [sic] breach of the parties' agreement." (Doc. #14, *PageID* #116).

5

Lanza counters that Nevada statutory law defines "operation agreement" as "any valid agreement of the members as to the affairs of a limited-liability company and the conduct of its business, whether in any tangible or electronic form." Nev. Rev. Stat. § 86.101. When read in isolation, § 86.101 would resolve the issue by requiring a written operating agreement. But, Nevada LLC law speaks with more permissive language when discussing an LLC's "operating agreement." It starts, as noted above, by allowing the members of an LLC the option of choosing whether or not to adopt an operating agreement. Nev. Rev. Stat. § 86.286(1); *see Weddell v. H2O, Inc*., 271 P.3d 743, 749 (Nev. 2012) (citing § 86.286). Nevada LLC law continues this permissive approach in the next sentence of § 86.286(1): "An operating agreement may be adopted only by unanimous vote or unanimous written consent of the members, which may be in any tangible or electronic format, or by the sole member….." If the relative pronoun "which" refers to "An operating agreement," what follows after "which" allows for operating agreements to exist without a written instrument—"**may** be in any tangible or electronic form …." *Id*. (emphasis added).

Thus, these statutory provisions read together create three possibilities under Nevada LLC law: An LLC may exist without any operating agreement, *see* § 86.286(1); an LLC may exist with a written operating agreement (in tangible or electronic format), *see* § 86.101; or, an LLC may exist with an oral operating agreement, *see* § 86.286(1). The permissible creation of an LLC under Nevada law without any operating agreement is consistent with the conclusion that Nevada law permits the existence of an LLC with an oral operating agreement. In this manner, Nevada law reflects the Uniform Limited

6

Liability Partnership Act's approach to the issue: "'Partnership agreement' means that agreement, whether or not referred to as a partnership agreement and whether oral, implied, in a record, or in any combination thereof, of all the partners of a limited partnership .…" Unif. Ltd. Part. Act 2013 § 102(14) (comment: "The definition in Paragraph 14 is very broad …. [It] puts no limits on the form of the partnership agreement….").

Even if reasonable debate remains about the above, neither Plaintiffs nor Lanza have presented convincing case law in support of their positions. This might well be understandable (the undersigned's research, which while not exhaustive, did not locate on-point cases concerning Nevada LLCs). But it is worth observing that the parties have not presented their contentions in a well-developed manner. Plaintiffs, for their part, cite no case law in their memorandum and present no meaningful analysis of Nevada LLC law. Lanza, for her part, did not raise in her Motion her contention that Nevada LLC law requires operating agreements to be in writing. Instead, she first raised this contention in her reply. Although this was a natural result of Plaintiffs' contention that the parties had an operating agreement, just not a written one, raising her writing-requirement argument in her reply deprived Plaintiffs of the opportunity to specifically address it. "It is well settled, however, that a party may not raise an issue for the first time in a reply brief." *Books A Million, Inc. v. H & N Enterprises, Inc.*, 140 F.Supp.2d 846, 859 (S.D. Ohio 2001) (Rice, D.J.) (citing *Aetna Cas. and Sur. Co. v. Leahey Const. Co., Inc.,* 219 F.3d 519, 545 (6th Cir. 2000)); *see NetJets Large Aircraft, Inc. v. U.S.*, 80 F.Supp.3d 743, 765 (S.D. Ohio 2015) (Sargus, D.J.) ("'An issue raised for the first time in a reply brief has

7

not been fully briefed, and thus, is not appropriate for decision.'" (citation omitted)). These shortcomings in the parties' memoranda leave the issue—whether or not Nevada law requires LLC operating agreements to be in writing—not fully developed. And, in light of these shortcomings, the parties' present memoranda create the need for further development in the crucible of summary-judgment (or trial, if warranted). Perhaps the parties exchanged emails or other writings that would suffice to show their agreement to particular membership rights or obligations. *Cf.* Unif. Ltd. Part. Act, §102(14) (comments: "[A]s soon as a limited partnership comes into existence, it perforce has a partnership agreement…."). They have not, moreover, discussed whether Nevada law contains a Statute of Frauds that would apply to NicQuid's operation. *Cf.* Unif. Ltd. Part. Act, §102(14) (comments: "Partnership agreements, like other contracts, are subject to the Statute of Frauds…."). With these and potentially other issues still in play, it is premature to partially dismiss Plaintiffs' claims to the extent they are premised on the allegation that Lanza is no longer a member of NicQuid.

The two cases that Lanza rely on—*Man Choi Chiu v. Chiu*, 71 A.D.3d 646, 647, 896 N.Y.S.2d 131 (S. Ct. N.Y. 2010) and *Brazil v. Rickerson*, 268 F. Supp.2d 1091 (W.D. Mo. 2003)—do not address Nevada LLC law. And, these two cases do not address the circumstances Plaintiffs allege, specifically that a valid unwritten operating agreement existed between all the members of NicQuid.

Additionally, Plaintiffs allege that Lanza voluntarily withdrew from NicQuid by not contributing to its operation for over three years and by engaging in various wrongful acts. This occurred, according to Plaintiffs, before they voted to expel her from NicQuid.

8

Plaintiff thus concluded that taking their allegations as true, Lanza could not have stopped her removal after she voluntarily withdrew. In support, Plaintiffs quote Nev. Rev. Stat. § 86.335(2), which states:

> § 86.335. Resignation or withdrawal of member in violation of operating agreement; loss of right to participate upon resignation or withdrawal[.]
>
> (2) Except as otherwise provided in chapter 463 of NRS, the articles of organization or the operating agreement, a member who resigns or withdraws ceases to be a member, has no voting rights and has no right to participate in the management of the company, even if under this section a payment due to the member from the company is deferred.

Lanza contends that this statute applies only when there is a written operating agreement. This, she contends, is seen in the statute's title, to "Resignation or withdrawal of member in violation of operating agreement; loss of right to participate upon resignation or withdrawal." But here Plaintiffs essentially contends there is an oral operating agreement, which is expressly allowed by Nevada law.

Lanza next maintains that even if she could have been expelled, her membership interest in NicQuid did not terminate. Here, Lanza relies on Nev. Rev. Stat. § 86.491(4), which provides in part:

> 86.491. Events requiring dissolution and winding up of affairs; powers and duties of person winding up affairs; effect of certain events affecting member.
>
> (4) Except as otherwise provided in this section, the articles of organization or the operating agreement, the … expulsion … of a member or any other event affecting a member … does not: (a) Terminate the status of a person as a member[.]

9

Lanza overlooks that Plaintiffs' complaint alleges she engaged in various acts of misconduct and breaches of fiduciary duty. Her present reliance on § 86.491(4) does not address what membership rights and financial interests she will have, assuming she engaged in the wrongful conduct alleged in Plaintiffs' complaint. Consequently, she has not shown that she is entitled to partial judgment on the issue of whether she presently holds any membership rights or financial interests in NicQuid.

**IT IS THEREFORE RECOMMENDED THAT**:

Lanza's Motion for Partial Judgment on the Pleadings (Doc. #11) be denied.

August 15, 2017

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).