IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SCOTT ELEY, *et al.*,

    Plaintiffs,

v.

ANTOINETTE LANZA, *et al.*,

    Defendants.

:
:
:
:
:
:

Case No. 3:16-cv-395

JUDGE WALTER H. RICE

---

DECISION AND ENTRY REJECTING UNITED STATES MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #23);
SUSTAINING DEFENDANT ANTOINETTE LANZA'S OBJECTIONS
THERETO (DOC. #24); SUSTAINING MOTION OF DEFENDANT
ANTOINETTE LANZA FOR PARTIAL JUDGMENT ON THE PLEADINGS
(DOC. #11)

---

This matter is currently before the Court on Defendant Antoinette Lanza's Objections, Doc. #24, to United States Magistrate Judge Sharon L. Ovington's Report and Recommendations, Doc. #23. Magistrate Judge Ovington recommended that the Court overrule Lanza's Motion for Partial Judgment on the Pleadings, Doc. #11. Plaintiffs have filed a Response to Lanza's Objections. Doc. #26.

For the reasons set forth below, the Court sustains Lanza's Objections, rejects the Report and Recommendations, and sustains Lanza's Motion for Partial Judgment on the Pleadings.

I.  Background and Procedural History

   A.  Complaint

According to the Complaint, in 2012, Plaintiffs Scott Eley, Adam Knudsen, Jack Manning, and Robert Winslow entered into an oral agreement with Defendant Antoinette Lanza to begin operation of NicQuid, LLC, a company that develops, markets and manufactures products related to electronic cigarettes. Doc. #2. Lanza's initial capital contribution was $15,000. NicQuid is incorporated in the State of Nevada, but has its principal place of business in Ohio. NicQuid has never had a written operating agreement or partnership agreement.

Lanza's relationship with Plaintiffs has deteriorated over the years. According to Plaintiffs, she "disengaged" from NicQuid more than three years ago. She nevertheless continues to use NicQuid's expense accounts and has set up a competing company. In September of 2015, after she allegedly became verbally abusive during a conference call, Plaintiffs voted to remove her from the limited liability company ("LLC"). She has refused buyout offers, and has not participated in NicQuid's business operations since being expelled. Plaintiffs maintain that Lanza is being unjustly enriched because, although she no longer materially participates in the company, she continues to receive profit distributions from NicQuid.

Plaintiffs seek a declaration that Lanza has no further interest in NicQuid, and that she has breached her agreement with them and breached her fiduciary duties to NicQuid and Plaintiffs. They also seek an Order directing her to return all

2

disbursements received after September of 2015, and to return all property belonging to NicQuid. In addition, Plaintiffs seek an Order determining the value of Lanza's interest in NicQuid, along with an award of punitive damages, attorney's fees and costs. Lanza has filed counterclaims for breach of fiduciary duty, breach of contract, conversion, accounting, and declaratory judgment. Doc. #3.

### B. Motion for Partial Judgment on the Pleadings (Doc. #11)

On January 30, 2017, Lanza filed a Motion for Partial Judgment on the Pleadings. Doc. #11. The motion is directed solely to Plaintiffs' request for a declaration that Lanza was properly removed as a member of NicQuid and has no further interest in the company. She argues that, because there is no operating agreement that permits involuntary expulsion, Plaintiffs lacked legal authority to involuntarily expel her as a member of NicQuid. Moreover, even if they had the authority to vote to take away her right to further participate in management of the company, that vote does not terminate her status as a "member" of NicQuid or affect her ownership interest.[1]

Because NicQuid is incorporated in Nevada, Nevada law applies. *See* Ohio Rev. Code § 1705.53 ("the laws of the state under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its members."). Under Nevada law, an LLC is not required to adopt an operating

---

[1] A "member" is defined as "the owner of a member's interest in a limited-liability company or a noneconomic member." Nev. Rev. Stat. § 86.081. "Member's interest" is defined as "a share of the economic interest in a limited-liability company, including profits, losses and distributions of assets." Nev. Rev. Stat. § 86.091.

3

agreement. Nev. Rev. Stat. §86.286(1). Nevada statutes say nothing about whether a member of an LLC can be involuntarily expelled absent an operating agreement provision permitting an involuntary expulsion. Citing cases from New York and Missouri, Lanza argues that, because there is no operating agreement containing any such provision and the statutes are silent, she cannot be involuntarily expelled from participation in NicQuid. *See Man Choi Chiu v. Chiu*, 896 N.Y.S. 2d 131, 132 (N.Y. App. Div. 2010); *Brazil v. Rickerson*, 268 F. Supp. 2d 1091, 1099 (W.D. Mo. 2003).

Lanza further argues that, even if there were some mechanism by which she could be involuntarily expelled, Plaintiffs' vote could not terminate her status as a member. Nevada law provides that, unless otherwise provided by statute, the articles of incorporation or the operating agreement, the expulsion of a member does not "[t]erminate the status of the person as a member." Nev. Rev. Stat. §86.491(4)(a).

Plaintiffs maintain that this statute is inapplicable because it governs only procedures to be followed when an LLC is being dissolved. Section 86.491 is entitled "Events requiring dissolution and winding up of affairs; powers and duties of person winding up affairs; effect of certain events affecting member." Plaintiffs further argue that the absence of a statute governing involuntary expulsion from an LLC does not necessarily mean that it is prohibited. In addition, Plaintiffs argue that the fact that there was no written operating agreement does not mean that there was not an oral agreement. Finally, to the extent that Plaintiffs have alleged

4

that Lanza disengaged from participation in NicQuid, they note that Nevada Revised Statute § 86.335(2) states that, except as otherwise provided by statute, the articles of incorporation or the operating agreement, "a member who resigns or withdraws ceases to be a member, has no voting rights and has no right to participate in the management of the company . . . "

In her reply brief in support of her motion, Lanza argues that, under Nevada law, operating agreements must be in writing. Nevada Revised Statute §86.101 defines an "operating agreement" as "any valid agreement of the members as to the affairs of a limited-liability company and the conduct of its business, *whether in any tangible or electronic format*." (emphasis added). According to Lanza, because there is no operating agreement in a tangible or electronic format, § 86.335 does not apply. That statute is entitled "Resignation or withdrawal of member in violation of operating agreement; loss of right to participate upon resignation or withdrawal."

Lanza further argues that, even if she could be expelled from NicQuid, her status as a member is not affected. She maintains that Nevada Revised Statute §86.491(4) applies regardless of whether the expulsion is connected to the dissolution of the limited liability company.

### C. Report and Recommendations (Doc. #23)

On August 15, 2017, United States Magistrate Judge Sharon L. Ovington issued a Report and Recommendations, Doc. #23, recommending that the Court overrule Lanza's Motion for Partial Judgment on the Pleadings. As she noted, the

relevant question is whether Plaintiffs' request for a declaration that Lanza has no further interest in NicQuid "states a plausible claim for relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

Magistrate Judge Ovington acknowledged that Nevada law does not require an LLC to adopt an operating agreement. Nev. Rev. Stat. §86.286(1). However, she concluded that, if an operating agreement *is* adopted, it need not be in writing. She noted that §86.286(1) provides that "[a]n operating agreement may be adopted only by the unanimous vote or unanimous written consent of the members, which *may be* in any tangible or electronic format, or by the sole member." *Id.* (emphasis added). She construed this portion of the statute to permit *oral* operating agreements, a result that she noted was consistent with the "Uniform Limited Liability Partnership Act."[2]

She noted that Plaintiffs' factual allegations gave rise to the possibility that the parties may have entered into oral agreements with respect to some aspects of NicQuid's operations. For example, the Complaint alleges that Lanza used NicQuid's expense accounts without permission and set up a competing business, which the parties had "previously agreed could not be done." Doc. #2, PageID#54.

---

[2] This appears to be a typographical error. She actually cites to §102(14) of the Uniform Limited Partnership Act, which defines a "partnership agreement" as an agreement of the partners, "whether oral, implied, in a record, or in any combination thereof."

6

Magistrate Judge Ovington observed that neither party had presented any controlling case law on the question of whether Nevada law required operating agreements to be in writing. Moreover, Lanza waited until her reply brief in support of her motion to raise this argument, thereby depriving Plaintiffs of the opportunity to respond. Neither party discussed whether Nevada law contains a Statute of Frauds that would require an operating agreement to be in writing. Given that these issues were not fully developed, she found that partial dismissal was premature. Magistrate Judge Ovington also suggested that emails or other writings may surface later, showing the parties' agreement with respect to certain membership rights and obligations.

Having found that Nevada law permits oral operating agreements, Magistrate Judge Ovington rejected Lanza's argument that Nevada Revised Statute § 86.335 applies only when there is a *written* operating agreement. That statute, entitled "Resignation or withdrawal of member in violation of operating agreement," provides that a member who withdraws "ceases to be a member, has no voting rights and has no right to participate in the management of the company."

Finally, Magistrate Judge Ovington noted that the wrongful conduct and breaches of fiduciary duty alleged in the Complaint could also affect Lanza's membership rights and financial interests in NicQuid. In her view, it was therefore premature to enter judgment on the question of Lanza's ongoing status as a member of NicQuid.

For all of these reasons, Magistrate Judge Ovington recommended that the Court overrule Lanza's Motion for Partial Judgment on the Pleadings.

II. **Objections to Report and Recommendations (Doc. #24)**

Ms. Lanza has filed timely Objections to Magistrate Judge Ovington's Report and Recommendations. Doc. #24. She urges the Court to reject the Report and Recommendations because: (1) Nevada law does not allow a limited liability company to expel a member in the absence of such a provision in a *written* operating agreement; and (2) under Nevada law, expulsion of a member from *operation* of a limited liability company does not terminate that member's *ownership* interest or affect the member's right to share in the company's profits, losses, or distribution of assets.

In their response to Lanza's Objections, Plaintiffs now concede that their alleged expulsion of Lanza from NicQuid did not terminate her status as a "member" of the limited liability company. *See* Nev. Rev. Stat. § 86.491(4)(a). They argue, however, that Magistrate Judge Ovington correctly concluded that Nevada law allows for oral operating agreements. Plaintiffs ask the Court to adopt the Report and Recommendations to the extent it concludes that they had a right to expel Lanza from further participation in the operation of NicQuid, LLC. Doc. #26, PageID#170-71.

### A. Standard of Review

The district court must conduct a *de novo* review of any part of the magistrate judge's disposition to which proper objections have been filed. The court may accept, reject, or modify the recommended disposition, receive further evidence, or remand the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

### B. Analysis

At issue is whether Plaintiffs' request for a declaration that Lanza has no further interest in NicQuid states a claim upon which relief can be granted. Having reviewed the parties' briefs, the Report and Recommendations, and the applicable law, the Court agrees with Lanza that Plaintiffs have failed to state a plausible claim.

In support of their argument that they had authority to expel Lanza from the LLC, Plaintiffs rely on Nevada Revised Statute §86.335(2), which is entitled "Resignation or withdrawal of a member in violation of operating agreement; loss of right to participate upon resignation or withdrawal." Subsection 1 governs the amount payable to a member who has resigned or withdrawn in violation of the operating agreement, and provides for deferral of that payment to prevent unreasonable hardship to the company. Nev. Rev. Stat. §86.335(1). Subsection 2 of the statute states:

> Except as otherwise provided in chapter 463 of NRS, the articles of organization or the operating agreement, a member who resigns or withdraws ceases to be a member, has no voting rights and has no

9

right to participate in the management of the company, even if under this section a payment due to the member from the company is deferred.

Nev. Rev. Stat. § 86.335(2).

Plaintiffs' reliance on this statute is misplaced for two reasons. First, given that there is no operating agreement, Lanza could not have resigned or withdrawn "in violation of the operating agreement." This statute is therefore inapplicable on its face.

The Court rejects Magistrate Judge Ovington's finding that an oral operating agreement is permissible. She points to the following language as permitting, but not requiring, a written agreement: "An operating agreement may be adopted only by the unanimous vote or unanimous written consent of the members, which *may be* in any tangible or electronic format, or by the sole member." Nev. Rev. Stat. §86.286(1) (emphasis added).[3]

The legislative history of the statute, however, indicates that a written agreement is required. Until 2011, Nevada Revised Statute §86.101 defined an "operating agreement" as "any valid written agreement of the members as to the affairs of a limited-liability company and the conduct of its business." Likewise, Nevada Revised Statute §86.286(1) provided that "[a]n operating agreement may be adopted only by the unanimous vote or unanimous written consent of the

---

[3] The Court agrees with Lanza that Magistrate Judge Ovington's citation to the Uniform Limited Partnership Act, which specifically allows oral operating agreements, is inapposite given that NicQuid is not a partnership, but a limited liability company.

10

members, or by the sole member, and the operating agreement must be in writing." In 2011, the statutes were amended in order to accommodate advances in technology. No longer was a tangible, written agreement required; it could now also be in an electronic format. *See* 2011 Nevada Laws Ch. 168 (A.B. 564).

Plaintiffs argue, however, that this Court must follow the plain meaning of the statutes unless the language is ambiguous. *Harris Assocs. v. Clark Cty. Sch. Dist.*, 81 P.3d 532, 534 (Nev. 2003). According to Plaintiffs, the Nevada statutes clearly allow oral operating agreements. Section 86.101 defines an "operating agreement" as "any valid agreement of the members as to the affairs of a limited-liability company and the conduct of its business, whether in any tangible or electronic format." Nev. Rev. Stat. § 86.101. In the Court's view, the plain meaning of this language clearly requires any operating agreement to be in a tangible or electronic format.

Plaintiffs also point to § 86.286, which allows an operating agreement to be adopted either: (1) by unanimous vote; or (2) by unanimous written consent, which may be in any tangible or electronic format. According to Plaintiffs, there is no requirement that a unanimous *vote* be in writing. This statute, however, simply sets forth the *procedures* by which an operating agreement may be adopted. It does not negate the requirement that the operating agreement itself must be in a tangible or electronic format. Moreover, to the extent that § 86.286 creates any ambiguity, the Court may resort to the legislative history of the statute, *see Harris*

*Assocs.*, 81 P.3d at 534, which makes it clear that oral operating agreements are impermissible under Nevada law.

Magistrate Judge Ovington faulted Lanza for waiting until her reply brief to raise the argument that Nevada requires operating agreements to be in writing. However, as Lanza notes, there was no reason to raise it in her motion, given that the Complaint does not allege that the parties had an oral operating agreement that permitted involuntary expulsion. She raised this argument in her reply brief to counter Plaintiffs' argument that "the fact that there was no written agreement in no way means there was no agreement." Doc. #14, PageID#116. Plaintiffs did not seek leave to file a sur-reply to address this issue.

Nevada Revised Statute § 86.335(2) is also inapplicable because, although Plaintiffs alleged that Lanza "disengaged herself from assisting in any way with the company's operations," Doc. #2, PageID#54, Plaintiffs did not allege that Lanza "resigned" or voluntarily "withdrew" from *membership* in NicQuid. Instead, Plaintiffs allege that they voted to involuntarily remove or expel her. *Id.* at PageID#55.

It is undisputed that there is no operating agreement that expressly allowed Plaintiffs to expel her from further participation in the operation of NicQuid. It is also undisputed that Nevada law is silent on the question of whether a member of a limited liability company can be expelled. As Lanza notes, several other states have held that when there is no statutory authority for expulsion, and no written operating agreement that allows it, a member cannot be expelled. *See Man Choi*

*Chiu v. Chiu*, 896 N.Y.S. 2d 131, 132 (N.Y. App. Div. 2010) (holding that where operating agreement sets forth no mechanism for the expulsion of members and there was no statutory provision authorizing such a remedy, plaintiff failed to state a claim upon which relief can be granted); *David Mortuary, LLC v. David*, 194 So. 3d 826, 830 (La. App. Ct. 2016) (where there was no statutory authority for expelling a member of a limited liability company, and the members included no such provision in the articles of incorporation or the operating agreement, a member could not be expelled); *Brazil v. Rickerson*, 268 F. Supp. 2d 1091, 1099 (W.D. Mo. 2003) (noting that Missouri's limited liability statute providing that a member may be expelled only "in accordance with the operating agreement," is an apparent "codification of the common law that, absent express authority in the articles, a corporation does not have an inherent, unspecified power to expel members").

There appears to be no Nevada case law on point, but the Court finds these cases to be persuasive. To the extent that Plaintiffs seek a declaration that they had authority to expel Lanza from further participation in the operation of NicQuid, the Court finds that they have failed to state a claim upon which relief can be granted.

The Court also agrees with the parties that, even if Plaintiffs did have legal authority to "expel" Lanza from NicQuid, this would not terminate her status as a member or deprive her of the right to share in NicQuid's profits and losses. Nevada Revised Statute § 86.491(4) provides:

> 4. Except as otherwise provided in this section, the articles of organization or the operating agreement, the death, retirement, resignation, *expulsion*, bankruptcy, dissolution or dissociation of a member or any other event affecting a member, including, without limitation, a sole member, *does not*:
>
> (a) *Terminate the status of the person as a member*; or
>
> (b) Cause the limited-liability company, or the series of the company with which the member is associated, to be dissolved or its affairs to be wound up.

Nev. Rev. Stat. § 86.491(4) (emphasis added).

Section 86.491 is entitled "Events requiring dissolution and winding up of affairs; powers and duties of person winding up affairs; effect of certain events affecting member." Plaintiffs had previously argued that, because NicQuid is not being dissolved and no one is "winding up affairs," § 86.491(4) does not apply. They now properly concede otherwise.

The first three subsections of § 86.491 discuss the circumstances under which a limited liability company *must* be dissolved and what actions must be taken to wind up the affairs of the company. Subsection (4), on the other hand, deals with the "effect of certain events affecting member." It provides that, unless the parties have agreed otherwise, "death, retirement, resignation, expulsion, bankruptcy, dissolution or dissociation of a member" does not terminate the status of the person as a member of the LLC, or require dissolution of the LLC. This subsection of the statute is not rendered inapplicable by the fact that Lanza's purported expulsion did not occur in conjunction with a dissolution of the

14

company. Pursuant to Nev. Rev. Stat. § 86.491(4), Lanza's purported expulsion did not terminate her membership interest in NicQuid.

Magistrate Judge Ovington also suggests that the acts of misconduct and breaches of fiduciary duty alleged in the Complaint could negatively affect Lanza's membership rights and financial interests in NicQuid. The Court disagrees. Although the alleged misconduct could subject Lanza to damages on some of Plaintiffs' other claims, it has no impact on her ongoing status as a member of NicQuid.

To the extent that Plaintiffs seek "a declaration that Lanza has no further interest in Defendant NicQuid," Doc. #2, PageID#55, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted.

### III. Conclusion

For the reasons set forth above, the Court REJECTS Magistrate Judge Ovington's Report and Recommendations, Doc. #23, SUSTAINS Defendant Lanza's Objections to the Report and Recommendations, Doc. #24, and SUSTAINS Defendant Lanza's Motion for Partial Judgment on the Pleadings, Doc. #11.

Date: September 20, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE